IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RALPH CLAY WALSH, JR., D.O. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER, LISA HODGE, PH.D., GSBS; JOHN SCHETZ, PH.D., GSBS; PATRICK CLAY, PHARMD, SCOP; LISA KILLAM-WORRALL, PHARMD, SCOP; JESSICA HARTOS, PH.D.; YASSER SALEM, PT, PH.D., SPH; EMILY SPENCE-ALMAGUER, PH.D., SPH; SUMIHIRO SUZUKI, PH.D., SPH; VICTOR KOSMOPOULOS, PH.D., TCOM; MICHAEL R. WILLIAMS, DO, MD, MBA; PATRICIA GWIRTZ, PH.D.; AND DAMON SCHRANZ, D.O., TCOM, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. _____ |
| | | |
| Defendants. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Ralph Clay Walsh, Jr., D.O., Plaintiff ("Walsh" or "Plaintiff"), files this his Original Complaint, complaining of Defendant University of North Texas Health Science Center ("UNTHSC"), and Defendants Lisa Hodge, Ph.D., GSBS; John Schetz, Ph.D., GSBS; Patrick Clay, PharmD, SCOP; Lisa Killam-Worrall, PharmD, SCOP; Jessica Hartos, Ph.D.; Yasser Salem, PT, Ph.D., SPH; Emily Spence-Almaguer, Ph.D., SPH; Sumihiro Suzuki, Ph.D., SPH; Victor Kosmopoulos, Ph.D., TCOM; Damon Schranz, D.O., TCOM; Michael R. Williams, DO, MD, MBA;  and Patricia Gwirtz, Ph.D., each in his or her individual capacity, for violating his civil rights under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

In support of his Original Complaint, Plaintiff hereby alleges and states as follows:

## I.    Parties

1.    This action seeks equitable relief, compensatory and punitive damages, expert witness fees, taxable costs of court, and prejudgment and post-judgment interest for violations of Dr. Walsh's procedural due process rights and for breach of Dr. Walsh's employment contract with Defendant UNTHSC.

2.    Plaintiff is a former faculty member and provider of medical services for UNTHSC's clinical practice group, which is located in this Judicial District.

3.    Defendant UNTHSC is a Texas state institution of higher education.  Defendant UNTHSC may be served through its registered agent, Alan Stucky, 801 North Texas Blvd., Room 318, Denton, TX 76201.

4.    Defendant Lisa Hodge, Ph.D. was at all times relevant to this Complaint an employee of UNTHSC.  Dr. Hodge was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas. Defendant Hodge may be served with process at 1008 Telford Tr., Crowley, TX 76036, or anywhere else she may be found.

5.    Defendant John Schetz, Ph.D. was at all times relevant to this Complaint an employee of UNTHSC.  Dr. Schetz was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas. Defendant Schetz may be served with process at 8424 Whippoorwill Dr., Fort Worth, TX 76123, or anywhere else he may be found.

6.    Defendant Patrick Clay, PharmD, SCOP was at all times relevant to this Complaint an employee of UNTHSC.  Dr. Clay was, at all times, acting under color of law,

under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Clay may be served with process at 8729 Hornbeam Dr., Fort Worth, TX 76123, or anywhere else he may be found.

7.      Lisa Killam-Worrall, PharmD, SCOP was at all times relevant to this Complaint an employee of UNTHSC.  Dr. Killam-Worrall was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas. Defendant Killam-Worrall may be served with process at 700 Sparrow Dr. Fort Worth, TX 76131, or anywhere else she may be found.

8.      Yasser Salem, PT, Ph.D., SPH was at all times relevant to this Complaint an employee of UNTHSC. Dr. Salem was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Salem may be served at 1016 Villa Dr., Fort Worth, TX 76120, or anywhere else he may be found.

9.      Jessica Hartos, Ph.D. was at all times relevant to this Complaint an employee of UNTHSC. Dr. Hartos was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Hartos may be served at 5011 Ledgestone Dr., Fort Worth, TX 76132, or anywhere else she may be found.

10.     Emily Spence-Almaguer, Ph.D., SPH was at all times relevant to this Complaint an employee of UNTHSC. Dr. Spence-Almaguer was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Spence-Almaguer may be served at 3933 Collinwood Ave., Fort Worth, TX 76107, or anywhere else she may be found.

11.     Sumihiro Suzuki, Ph.D. was at all times relevant to this Complaint an employee of UNTHSC. Dr. Suzuki was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Suzuki may be served at 6027 Cove View Blvd., Apt. 1522, Galveston, TX 77554, or anywhere else he may be found.

12.     Victor Kosmopoulos, Ph.D., TCOM was at all times relevant to this Complaint an employee of UNTHSC. Dr. Kosmopoulos was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas. Defendant Kosmopoulos may be served at 1800 Turner Ridge Dr., Apt. 10211, Fort Worth, TX 76110, or anywhere else he may be found.

13.     Damon Schranz, D.O., TCOM was at all times relevant to this Complaint an employee of UNTHSC. Dr. Schranz was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas. Defendant Schranz may be served at 3625 Wilkie Way, Fort Worth, TX 76133, or anywhere else he may be found.

14.     Michael R. Williams, DO, MD, MBA was at all times relevant to this Complaint an employee of UNTHSC. Dr. Williams was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas. Defendant Williams may be served at 6217 Curzon Ave., Fort Worth, TX 76116, or anywhere else he may be found.

15.     Defendant Patricia Gwirtz, Ph.D. was at all times relevant to this Complaint an employee of UNTHSC.  Dr. Gwirtz was, at all times, acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.

Defendant Gwirtz may be served with process at 3708 Mattison Ave., Fort Worth, Texas 76107, or anywhere else she may be found.

## II.      Jurisdiction

16.      This action is brought pursuant to 42 U.S.C. § 1983.  The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, as this lawsuit arises under the Constitution, laws, or treaties of the United States.   Additionally, the Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367(a).

## III.     Venue

17.      Venue is proper in this Court under 28 U.S.C. § 1391(b), as this is the judicial district in which one or more of the defendants reside and where a substantial part of the events or omissions giving rise to the claims occurred.

## IV.     Facts

**Background**

18.      Plaintiff is a Board-Certified physician in Osteopathic Manipulative Medicine and Family Medicine.  From September 2012 until his wrongful termination in December 2014, he was employed as an Associate Professor for UNTHSC's Osteopathic Manipulative Medicine department, with responsibilities that included both clinical work and teaching.  He worked regularly and extensively with other members of UNTHSC's faculty and with its medical students.  Prior to the weekend of October 24, 2014, he had never been accused by anyone of engaging in conduct that violated UNTHSC's discrimination or harassment standards.

19.      Dr. Walsh was terminated based on a singular complaint brought under the auspices of Title IX by a third-year female medical student ("Medical Student"). Medical Student did not complain about a pattern of conduct, or about severe and pervasive conduct.

Instead, she complained about conduct that according to her own statement, occurred on one evening, in the presence of multiple witnesses, at a conference attended by doctors and students.

20.     When UNTHSC's rush to judgment resulted in his unfair and unfounded termination, Dr. Walsh appealed the termination through Article XIII of UNTHSC's Faculty Bylaws (the "Policy"). As he was entitled to do, Dr. Walsh requested a hearing before UNTHSC's Faculty Grievance and Appeal Committee (the "Appeals Committee"). After a hearing on March 23, 2015, the Appeals Committee recommended denial of Dr. Walsh's appeal. As the final step in the Policy appeals process, Dr. Walsh appealed to UNTHSC's President, Michael R. Williams, DO, MD, asking him to reject the Committee's recommendation. Dr. Williams refused, and instead elected to implement the recommendation of the Committee. By letter dated April 14, 2015, (postmarked on April 16, and received thereafter by Dr. Walsh), Dr. Williams advised Dr. Walsh of his termination.

**The Alleged Harassment and the Complaint Investigation**

21.     On October 24, 2014, Plaintiff, two other members of UNTHSC faculty, and two medical students, including Medical Student, attended a formal banquet as part of a medical conference in Seattle, Washington. The banquet included a reception, dinner, and dancing. Alcohol was served and consumed by all attendees, including Medical Student.

22.     The general mood of the group was festive and somewhat boisterous. Pictures taken during the evening depict Plaintiff, Medical Student, and the rest of the group smiling, laughing, and drinking. Plaintiff and Medical Student interacted frequently that evening, and they danced together. At one point when Plaintiff touched Medical Student on the small of her back, Medical Student reached behind her back and grabbed his hand.  Flattered, Plaintiff held

Medical Student's hand. The two continued interacting for much of the evening, and Medical Student initialed further hand-holding.

23.     Plaintiff, who is married, began to feel guilty about the flirtation, but he could not come up with a way to extricate himself from the interaction with Medical Student without making the situation awkward. The evening resolved of its own accord when, after further socializing among all of the UNTSCH attendees at a hotel bar, one of the other physicians became ill at the bar, and Medical Student walked her back to her room.

24.     The next week, Medical Student filed a Title IX complaint with UNTHSC, alleging that Dr. Walsh has sexually harassed her at the banquet. UNTHSC hired an outside investigator, Lisa Kaiser, who initiated an investigation. Dr. Walsh was dumbfounded when he learned of the complaint. When notified that he would be interviewed, Dr. Walsh asked the Title IX Coordinator if he should have counsel present with him. She merely responded, "That is your choice." She did not advise Dr. Walsh that Ms. Kaiser was an attorney, the managing partner of an employment law firm, and a self-professed nationally-recognized professional in legal compliance.

25.     When she met with Dr. Walsh, Ms. Kaiser did not identify herself as an attorney. Had he known that he was being interviewed by an attorney, Dr. Walsh would have rescheduled the meeting and returned with his own counsel.

26.     In the interview, Ms. Kaiser's questions and demeanor suggested to Plaintiff that she had already reached a conclusion before even listening to his side of the story.  Her questions were slanted and accusatory. When Ms. Kaiser asked him to walk her through the evening of October 24, Dr. Walsh openly admitted to the mutual flirtation with Medical Student and bad judgment as a married man. He denied having received any indication from Medical Student that

she was uncomfortable at any time that evening; to the contrary, he told Ms. Kaiser that she had been smiling and laughing throughout the evening.

27.     Dr. Walsh learned during the interview that Medical Student claimed that he had touched her buttocks and she claimed that he had invited her to his room. He vehemently denied both accusations, and he told Ms. Kaiser what actually had happened. Regarding the buttocks-touching complaint, Dr. Walsh told Ms. Kaiser that Medical Student had come over to sit by him while his hand was resting on the chair next to him; when she sat down, she sat on top of his hand. Regarding the alleged proposition, Dr. Walsh told Ms. Kaiser that he had asked Medical Student if she wanted him to walk her to her room because she had been drinking, and that her response was "Maybe, I don't know; I'll let you know." He also told her that Medical Student had initiated physical contact with him, and not the other way around, by reaching for and holding his hand several times during the evening.

28.     Plaintiff denied all allegation of wrongdoing, and provided Ms. Kaiser with ample information to show that Medical Student's allegations were not true.  He did tell her that as a married man and a Christian, he had been wrong to engage in the flirtation and that he regretted it.

29.     After his interview, Plaintiff asked UNTHSC for a copy of Ms. Kaiser's report repeatedly. It refused to give him a copy.

30.     On December 22, 2014, Dr. Walsh received a letter from Dr. David Mason, Chair of the UNTHSC's Department of Osteopathic Manipulative Medicine, informing him that, based on the findings of the sexual harassment investigation, UNTHSC was proposing a sanction of termination.  Dr. Mason's comments in the letter show that Ms. Kaiser misrepresented what he told her in the interview, and that her conclusions were grossly inaccurate.

31.     Dr. Walsh knew that the investigation was shoddy, and that it did not support a finding that he had violated any policy. In accordance with his rights under the Policy, he appealed the termination decision.

**Plaintiff's Employment Contract and Relevant Policies**

32.     Plaintiff's employment with UNTHSC was governed by the Employment Contract.  The Employment Contract protected Plaintiff from an at-will termination by requiring that UNTHSC prove specific grounds for termination. One of the stated grounds for termination is Dr. Walsh's failure to comply with UNTHSC's "reasonable policies."

33.     Chapter 5.205 of UNTHSC's Human Resources policies provides that "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature (regardless of gender) . . . constitutes a violation of this policy when: a.) submission to or tolerance of such conduct is made either explicitly or implicitly a term or condition of an individual's employment or education; or b.) submission to or rejection of such conduct by an individual is used as the basis for academic or employment decisions . . . affecting the individual; or c) such conduct has the purpose or effect of substantially interfering with an individual's academic or professional performance or creating an intimidating, hostile or offensive employment, or educational environment."

34.     Section C of the UNTHSC Policy describes the "due process" to which UNTHSC faculty members are entitled before termination based on an allegation of misconduct. The process that is required includes, among other things, that:

   a.  Appeals committee members may not consider or introduce any evidence or testimony acquired from outside the actual hearing;

b.  The appeals committee may not include any accuser of the faculty member, and "[t]he member of the committee will determine whether or not he or she can serve with fairness and objectively;"

c.  The burden of proof rests for proving misconduct is upon UNTHSC to establish by the greater weight of the credible evidence good cause for imposing sanctions against a faculty member for misconduct; and

d.  The parties have the right to confront, cross-examine, and rebut all witnesses.

**Plaintiff's Appeal**

35.    On January 5, 2015, Plaintiff notified UNTHSC that he was initiating an appeal hearing before the UNTHSC Faculty Grievance and Appeal Committee (the "Appeal Committee") to challenge the findings of the investigation and the proposed termination.

36.    Plaintiff received a response letter from Defendant Patricia A. Gwirtz, Ph.D. ("Dr. Gwirtz") dated February 10, 2015, informing him that "the charges of faculty misconduct derive from allegations of sexual harassment that are fully described in a 'Complaint Investigation Report,'" presumably the report prepared by Ms. Kaiser. Notwithstanding the importance of the report, Dr. Gwirtz further advised Dr. Walsh that he could not have a copy of the report (the "Report") until his appeal hearing. She told him that if he wanted to make an appointment, he could review (but not copy) a redacted version of the Report. She confirmed the Appeal Committee would receive and consider the Report as evidence in making its decision.

37.    Dr. Gwirtz sent a subsequent letter to Plaintiff regarding the appeal hearing. She told him that attendance at the hearing would be limited to the Appeal Committee, Plaintiff, a hospital advisor for each party, and witnesses.  It noted that parties could challenge particular

members of the Appeal Committee and that "[t]he committee member will determine whether he/she can serve with fairness and objectively."

38.    Plaintiff engaged an expert witness to testify regarding the partiality of Ms. Kaiser's investigation and the misleading Report, but due to UNTHSC's policy of not providing reports to faculty members accused of misconduct, the expert witness could not review the Report to prepare for the hearing.

39.    When he arrived for his appointment to review the Report, Dr. Walsh immediately noticed that it did not include many of the statements he had made to Ms. Kaiser, including his statement that Medical Student had reached behind her back to hold his hand; that her statement that he touched her buttocks arose from her siting on his hand; that she had grabbed his hand while they were on an escalator and pulled him toward her; or that she had been smiling and laughing the whole evening. Dr. Walsh also noted blatant falsehoods in the Report, including its representation that he had essentially confirmed Medical Student's account; its false assertion that he admitted asking her if she wanted him to come to her room; and its observation that he knew the events of the evening were "not right."

40.    In addition to the uphill battle he faced regarding the Report, Dr. Walsh was not informed that one member of the Appeals Committee, Defendant Damon Schranz, had been acting for some time as a "preceptor" for Medical Student. In his capacity as a preceptor, Schranz was a key advisor to Medical Student, spending approximately forty hours each week with her in various clinics. This close relationship inevitably would impact his impartiality. Had Plaintiff known that Defendant Schranz was Student's preceptor, he would have objected to his ability to act with neutrality.

PLAINTIFF'S ORIGINAL COMPLAINT – Page 11

41.     The appeal hearing was conducted on March 23, 2015. The Appeals Committee refused to allow Plaintiff's expert witness to listen to the testimony, including the testimony of Ms. Kaiser. Thus, she was neither allowed to review the Report, nor listen to the testimony upon which the Committee would base its decision so that she could rebut it.

42.     While she was allowed to testify, the expert's testimony was limited to what Dr. Walsh's non-lawyer representative was able to elicit. Despite these hardships, Plaintiff's expert pointed out to the Appeals Committee problems with Ms. Kaiser's investigation, including the inaccuracies, omissions, and half-truths in the Report.  She also reminded the Appeals Committee of UNTHSC's burden to demonstrate misconduct on Plaintiff's part.

43.     Medical Student was not at the hearing and was not otherwise questioned by the Appeals Committee.  Plaintiff had no opportunity to cross-examine her.

44.     The Appeals Committee concluded that Plaintiff had violated Faculty Policy 5.205 prohibiting the creation of a hostile work environment and recommended that Plaintiff be terminated. President Williams agreed with the recommendations and upheld the sanction of termination.

## VI.     Claims

### Count I – Violation of 42 U.S.C. § 1983
### *Monell* Claim Against UNTHSC for Failure to Provide Required Due Process

45.     Each allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

46.     Plaintiff had a constitutionally protected property interest in continued employment with UNTHSC based on his Employment Contract and on UNTHSC's policies and established rules. As such, Plaintiff was entitled to notice and an opportunity for hearing before being deprived of his employment.

47.     UNTHSC's Policy and due process requires, minimally, a hearing consisting of the following:

   a.  For UNTHSC to meet its burden of establishing good cause for his termination by the greater weight of the credible evidence;

   b.  To confront his accuser, that is Medical Student;

   c.  To be judged only by evidence at the hearing, and not from statements heard outside the hearing, such as those Defendant Schranz likely heard from Medical Student while acting as her preceptor;

   d.  To have access (himself or through his expert) to the evidence to be used against him, and in particular, the Report and the testimony of the investigator.

48.     In violation of its own written policies regarding hearing requirements, UNTHSC's actual custom, policy, or practice was for its Grievance and Appeals Panel to deny faculty members such as Plaintiff their due process rights by making the hearing process so fundamentally unfair as to deprive faculty members of the opportunity of being heard.

49.     Evidence of UNTHSC's policy or custom of denying procedural due process rights is established from its pre-hearing decisions that show its practice of failure to provide for a legitimate hearing process. For example, UNTHSC's practice is to refuse to allow an accused faculty member to have a copy of a harassment investigation report used against him at a misconduct hearing. This practice denies the faculty member the right to meaningfully participate in the hearing.

50.     UNTHSC's policy or custom of denying procedural due process is further illustrated in its refusal to allow the accused faculty member to cross-examine the complaining

party, and compounding that failure, its refusal to allow his expert witness to listen to the witness's testimony and contradict it.

51.     UNTHSC's policy or custom of denying procedural due process is further illustrated by its failure to require Appeals Committee members to disclose any close relationship with either party, leading to appeal hearings where committee members have personal relationships with one of the parties. In this case, its failure to require such a process deprived Dr. Walsh of the right to object to an interested panel member.

52.     UNTHSC's policy or custom of denying procedural due process is further illustrated by its practice of allowing hearsay testimony to support a conclusion that good cause exists to terminate a faculty member's employment.

53.     As a result of Defendants' wrongful conduct, Plaintiff has suffered loss of income and benefits in the past, loss of income and benefits in the future, damage to his personal and professional career and reputation in the past and future, humiliation and embarrassment, and in all reasonable probability, he will continue to suffer damages.

### Count II - Violation of 42 U.S.C. § 1983
### Violations of Plaintiff's Due Process Rights by the Individual Defendants

54.     Each allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

55.     The failure of the individual defendants to require that the hearing be held consistent with their own Policy and in a manner designed to provide Plaintiff with an opportunity to be heard is a violation of the due process clause of the Fourteenth Amendment.

56.     Their actions were not objectively reasonable in view of the totality of the circumstances.

57.     As a direct result of Defendants' conduct, Plaintiff has suffered loss of income and benefits in the past, loss of income and benefits in the future, damage to his personal and professional career and reputation in the past and future, humiliation and embarrassment, and in all reasonable probability, he will continue to suffer damages.

### Count III - Breach of Contract Against UNTHSC

58.     Each allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

59.     Plaintiff had a valid employment contract with UNTHSC.

60.     Plaintiff's employment contract set forth certain specific and limited circumstances that could bring about his termination, including "[his] failure or refusal to comply with the reasonable policies, standards, and regulations of UNTHSC."  To terminate Plaintiff based on the allegation of such a failure, UNTHSC was obligated to act "in accordance with applicable UNTHSC policies and bylaws."

61.     As set forth above, UNTHSC failed to act in accordance with its applicable policies in the conduct of the hearing, and specifically, in its failure to prove "good cause" for Plaintiff's termination as required.

62.     UNTHSC's conduct constitutes a breach of Plaintiff's employment agreement.

63.     As a result of UNTHSC's breach, Plaintiff has suffered loss of income and benefits in the past, loss of income and benefits in the future, damage to his personal and professional career and reputation in the past and future, humiliation and embarrassment, and in all reasonable probability, he will continue to suffer damages.

## Count IV - Attorneys' Fees

64.     As a result of Defendants' wrongful conduct, Plaintiff has been forced to retain the undersigned counsel. He has incurred, and will continue to incur, necessary attorneys' fees related to his pursuit of his claims against Defendants.

## Count IV - Jury Demand

65.     Plaintiff demands trial by jury on all issues so triable.

## Prayer

Based on the foregoing, Plaintiff requests that summons shall issue; and demands that Defendants appear and answer, and that on final trial of this lawsuit, Plaintiff have final judgment against Defendants for the following relief:

    a.  Lost wages, salary, and employment benefits;

    b.  Compensatory damages for future pecuniary loss, emotional pain and suffering, inconvenience, and loss of enjoyment of life;

    c.  Liquidated damages;

    d.  Exemplary damages on all claims allowed by law and in such amounts allowed by law;

    e.  Pre-judgment and post-judgment interest at the maximum amount allowed by law;

    f.  Costs of suit, reasonable attorneys' fees, and expert fees;

    g.  Reinstatement; and

    h.  Such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,


By:   /s/ *Julie E. Heath*
      Julie E. Heath
      State Bar No. 09348050
      Jennifer G. Snow
      State Bar No. 24051793
      FARROW-GILLESPIE & HEATH LLP
      1700 Pacific Ave., Suite 3700
      Dallas, Texas  75201
      (214) 361-5600 (telephone)
      (214) 203-0651 (fax)
      julie.heath@fghlaw.com
      jennifer.snow@fghlaw.com