IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RALPH CLAIBORNE WALSH, JR., D.O. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LISA HODGE, PH.D., GSBS; JOHN SCHETZ, PH.D., GSBS; PATRICK CLAY, PHARMD, SCOP; LISA KILLAM-WORRALL, PHARMD, SCOP; JESSICA HARTOS, PH.D.; YASSER SALEM, PT, PH.D., SPH; EMILY SPENCE-ALMAGUER, PH.D., SPH; SUMIHIRO SUZUKI, PH.D., SPH; VICTOR KOSMOPOULOS, PH.D., TCOM; MICHAEL R. WILLIAMS, DO, MD, MBA; PATRICIA GWIRTZ, PH.D.; AND DAMON SCHRANZ, D.O., TCOM, | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 4:17-CV-00323-Y |
| | ) | |
| Defendants. | | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Ralph Claiborne Walsh, Jr., D.O., Plaintiff ("Walsh" or "Plaintiff"), files this his First Amended Complaint, complaining of Defendants Lisa Hodge, Ph.D., GSBS; John Schetz, Ph.D., GSBS; Patrick Clay, PharmD, SCOP; Lisa Killam-Worrall, PharmD, SCOP; Jessica Hartos, Ph.D.; Yasser Salem, PT, Ph.D., SPH; Emily Spence-Almaguer, Ph.D., SPH; Sumihiro Suzuki, Ph.D., SPH; Victor Kosmopoulos, Ph.D., TCOM; Damon Schranz, D.O., TCOM; Michael R. Williams, DO, MD, MBA; and Patricia Gwirtz, Ph.D., each in his or her individual capacity, for violating his civil rights under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

In support of his First Amended Complaint, Plaintiff hereby alleges and states as follows:

## I.      Parties

1.      This action seeks equitable relief, compensatory and punitive damages, expert witness fees, taxable costs of court, and pre-judgment and post-judgment interest for violations of Dr. Walsh's procedural due process rights in connection with the termination of his employment with the University of North Texas Health Science Center ("UNTHSC").

2.      Plaintiff is a former faculty member and provider of medical services for UNTHSC's clinical practice group, which is located in this Judicial District.

3.      Defendant Lisa Hodge, Ph.D. was at all times relevant to this Complaint an employee of UNTHSC.  Dr. Hodge was a member of the Appeal Committee who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Hodge, at all times, was acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Hodge has appeared by counsel.

4.      Defendant John Schetz, Ph.D. was at all times relevant to this Complaint an employee of UNTHSC.  Dr. Schetz was a member of the Appeal Committee who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Schetz, at all times, was acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Schetz has appeared by counsel.

5.      Defendant Patrick Clay, PharmD, SCOP was at all times relevant to this Complaint an employee of UNTHSC.  Dr. Clay was a member of the Appeal Committee who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Clay, at all times, was acting under color of law, under color of the statutes,

ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Clay has appeared by counsel.

6.      Lisa Killam-Worrall, PharmD, SCOP was at all times relevant to this Complaint an employee of UNTHSC.  Dr. Killam-Worrall was a member of the Appeal Committee who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Killam-Worrall, at all times, was acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Killam-Worrall has appeared by counsel.

7.      Yasser Salem, PT, Ph.D., SPH was at all times relevant to this Complaint an employee of UNTHSC. Dr. Salem was a member of the Appeal Committee who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Salem, at all times, was acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Salem as appeared by counsel.

8.      Jessica Hartos, Ph.D. was at all times relevant to this Complaint an employee of UNTHSC. Dr. Hartos was a member of the Appeal Committee who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Hartos, at all times, was acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Hartos has appeared by counsel.

9.      Emily Spence-Almaguer, Ph.D., SPH was at all times relevant to this Complaint an employee of UNTHSC. Dr. Spence-Almaguer was a member of the Appeal Committee who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Spence-Almaguer, at all times, was acting under color of law, under color of the

statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Spence-Almaguer has appeared by counsel.

10.     Sumihiro Suzuki, Ph.D. was at all times relevant to this Complaint an employee of UNTHSC. Dr. Suzuki was a member of the Appeal Committee who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Suzuki, at all times, was acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.  Defendant Suzuki has appeared by counsel.

11.     Victor Kosmopoulos, Ph.D., TCOM was at all times relevant to this Complaint an employee of UNTHSC. Dr. Kosmopoulos was a member of the Appeal Committee who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Kosmopoulos, at all times, was acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.   Defendant Kosmopoulos has appeared by counsel.

12.     Damon Schranz, D.O., TCOM was at all times relevant to this Complaint an employee of UNTHSC. Dr. Schranz was a member of the Appeal Committee who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Schranz, at all times, was acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas.   Defendant Schranz has appeared by counsel.

13.     Michael R. Williams, DO, MD, MBA was at all times relevant to this Complaint an employee of UNTHSC. Dr. Williams is the President of UNTHSC who considered Plaintiff's challenge to the proposed disciplinary action that is at issue in this matter. Defendant Williams, at all times, was acting under color of law, under color of the statutes, ordinances, regulations,

policies, customs, and usages of the State of Texas. Defendant Williams has appeared by counsel.

14.     Defendant Patricia Gwirtz, Ph.D. was at all times relevant to this Complaint an employee of UNTHSC. Dr. Gwirtz is a UNTHSC employee who handled all pre-hearing communications with Plaintiff and made certain pre-hearing decisions. Dr. Gwirtz, at all times, was acting under color of law, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas. Defendant Gwirtz has appeared by counsel.

## II.     Jurisdiction

15.     This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, as this lawsuit arises under the Constitution, laws, or treaties of the United States.

## III.     Venue

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b), as this is the judicial district in which one or more of the defendants reside and where a substantial part of the events or omissions giving rise to the claims occurred.

## IV.     Facts

**Background**

17.     Plaintiff is a Board-Certified physician in Osteopathic Manipulative Medicine and Family Medicine. He was employed by UNTHSC from April 1, 2011, until his employment was wrongfully terminated by President Williams on April 14, 2017. During his employment, Plaintiff served as an Assistant and Associate Professor for UNTHSC's Osteopathic Manipulative Medicine department, with responsibilities that included both clinical work and teaching. He worked regularly and extensively with other members of UNTHSC's faculty and

with its medical students. Prior to the weekend of October 24, 2014, he had never been accused by anyone of engaging in conduct that violated UNTHSC's discrimination or harassment standards.

18.     Dr. Walsh lost his employment and livelihood based on a singular complaint brought under the auspices of Title IX by a third-year female medical student ("Medical Student"). Medical Student had suffered for decades with an emotional disorder caused by various factors, and which had been compounded in the summer of 2014 by an assault committed by a male authority figure (not Plaintiff). Medical Student did not complain about a pattern of conduct, or about severe and pervasive conduct. Instead, she complained about her interaction with Plaintiff on one evening, in the presence of multiple witnesses, at a conference attended by UNTHSC doctors and students.

19.     As many institutions have done in the face of a Title IX charge, UNTHSC put its thumb on the scale in favor of the female Medical Student and against Plaintiff. UNTHSC's rush to judgment resulted in an unfair and unfounded recommendation of termination, and deprived Dr. Walsh of equal protection on account of his gender, male.

20.     Plaintiff appealed the termination recommendation through Article XIII of UNTHSC's Faculty Bylaws (the "Policy"). As he was entitled to do, Dr. Walsh requested a hearing before UNTHSC's Faculty Grievance and Appeal Committee (the "Appeals Committee"). After a hearing on March 23, 2015, the Appeals Committee recommended that Dr. Walsh be terminated.

21.     Dr. Walsh asked UNTHSC's President, Michael R. Williams, DO, to reject the Committee's recommendation of termination. Dr. Williams refused, and instead elected to implement the recommendation of the Committee. By letter dated April 14, 2015, (postmarked

on April 16, and received thereafter by Dr. Walsh), Dr. Williams advised Dr. Walsh of his termination.

**The Alleged Harassment and the Complaint Investigation**

22.     On October 24, 2014, Plaintiff, two other members of UNTHSC faculty, and two medical students, including Medical Student, attended a formal banquet as part of a medical conference in Seattle, Washington. The banquet included a reception, dinner, and dancing. Alcohol was served and consumed by all attendees, including Medical Student.

23.     The general mood of the group was festive and somewhat boisterous. Pictures taken during the evening depict Plaintiff, Medical Student, and the rest of the group smiling, laughing, and drinking. Plaintiff and Medical Student interacted frequently that evening, and they danced together. At one point when Plaintiff touched Medical Student on the small of her back, Medical Student reached behind her back and grabbed his hand.  Flattered, Plaintiff held Medical Student's hand. The two continued interacting for much of the evening, and Medical Student initiated further hand-holding.

24.      Plaintiff, who is married, began to feel guilty about the flirtation, but he could not come up with a way to extricate himself from the interaction with Medical Student without making the situation awkward. The evening resolved of its own accord when, after further socializing among the UNTHSC attendees at a hotel bar, one of the other physicians became ill at the bar, and Medical Student walked her back to her room.

25.     The next week, Medical Student filed a Title IX complaint with UNTHSC, alleging that Dr. Walsh had sexually harassed her at the banquet. UNTHSC hired an outside investigator, attorney Lisa Kaiser, who initiated an investigation. Dr. Walsh was dumbfounded when he learned of the complaint. When notified that he would be interviewed, Dr. Walsh asked the Title IX Coordinator if he should have counsel present with him. She merely responded,

"That is your choice." She did not advise Dr. Walsh that Ms. Kaiser was an attorney, the managing partner of an employment law firm, and a self-professed nationally-recognized professional in legal compliance.

26.     When she met with Dr. Walsh, Ms. Kaiser did not identify herself as an attorney. Had he known that he was being interviewed by an attorney, Dr. Walsh would have rescheduled the meeting and returned with his own counsel.

27.     In the interview, Ms. Kaiser's questions and demeanor suggested to Plaintiff that she had already reached a conclusion before even listening to his side of the story.  Her questions were slanted and accusatory. When Ms. Kaiser asked him to walk her through the evening of October 24, Dr. Walsh openly admitted to the mutual flirtation with Medical Student and bad judgment as a married man. He denied having received any indication from Medical Student that she was uncomfortable at any time that evening; to the contrary, he told Ms. Kaiser that she had been smiling and laughing throughout the evening.

28.     Dr. Walsh learned during the interview that Medical Student claimed that he had touched her buttocks and she claimed that he had invited her to his room. He vehemently denied both accusations, and he told Ms. Kaiser what really happened. Regarding the buttocks-touching complaint, Dr. Walsh told Ms. Kaiser that Medical Student had come over to sit by him while his hand was resting on the chair next to him; when she sat down, she sat on top of his hand. Regarding the alleged proposition, Dr. Walsh told Ms. Kaiser that he had asked Medical Student if she wanted him to walk her to her room because she had been drinking, and that her response was "Maybe, I don't know; I'll let you know." He also told her that Medical Student had initiated physical contact with him, and not the other way around, by reaching for and holding his hand several times during the evening.

29.     Plaintiff denied all allegations of wrongdoing, and provided Ms. Kaiser with ample information to show that Medical Student's allegations were not true.  He did tell her that as a married man and a Christian, he had been wrong to engage in the flirtation and that he regretted it.

30.     After his interview, Plaintiff asked UNTHSC for a copy of Ms. Kaiser's report repeatedly. It refused to give him a copy.

31.     On December 22, 2014, Dr. Walsh received a letter from Dr. David Mason, Chair of the UNTHSC's Department of Osteopathic Manipulative Medicine, informing him that, based on the findings of the sexual harassment investigation, UNTHSC was proposing a sanction of termination.  Dr. Mason's comments in the letter show that Ms. Kaiser misrepresented what he told her in the interview, and that her conclusions were grossly inaccurate.

32.     Dr. Walsh knew that the investigation was shoddy, and that it did not support a finding that he had violated any policy. In accordance with his rights under the Policy, he appealed the termination recommendation.  He continued his employment with UNTHSC, and he continued receiving salary and all employment benefits.

**Plaintiff's Employment Contract and Relevant Policies**

33.     Plaintiff's employment with UNTHSC was governed by the Employment Contract.  The Employment Contract protected Plaintiff from an at-will termination by requiring that UNTHSC prove specific grounds for termination. One of the stated grounds for termination is Dr. Walsh's failure to comply with UNTHSC's "reasonable policies."

34.     Chapter 5.205 of UNTHSC's Human Resources policies provides that "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature (regardless of gender) . . . constitutes a violation of this policy when:

a) submission to or tolerance of such conduct is made either explicitly or implicitly a term or condition of an individual's employment or education; or b) submission to or rejection of such conduct by an individual is used as the basis for academic or employment decisions . . . affecting the individual; or c) such conduct has the purpose or effect of substantially interfering with an individual's academic or professional performance or creating an intimidating, hostile or offensive employment, or educational environment."

35.     Section C of the UNTHSC Policy describes the "due process" to which UNTHSC faculty members are entitled before termination based on an allegation of misconduct. The process that is required includes, among other things, that:

a.  Appeals committee members may not consider or introduce any evidence or testimony acquired from outside the actual hearing;

b.  The appeals committee may not include any accuser of the faculty member, and "[t]he member of the committee will determine whether or not he or she can serve with fairness and objectivity"

c.  The burden of proof for proving misconduct is upon UNTHSC to establish by the greater weight of the credible evidence good cause for imposing sanctions against a faculty member for misconduct; and

d.  The parties have the right to confront, cross-examine, and rebut all witnesses.

**Plaintiff's Hearing**

36.     On January 5, 2015, Plaintiff notified UNTHSC that he was initiating an appeal hearing before the Appeal Committee to challenge the findings of the investigation and the proposed termination.

37.     Plaintiff received a response letter from Defendant Patricia A. Gwirtz, Ph.D. ("Dr. Gwirtz") dated February 10, 2015, informing him that "the charges of faculty misconduct derive from allegations of sexual harassment that are fully described in a 'Complaint Investigation Report,'" presumably the report prepared by Ms. Kaiser. Notwithstanding the importance of the report, Dr. Gwirtz further advised Dr. Walsh that he could not have a copy of the report (the "Report") until his appeal hearing. She told him that if he wanted to make an appointment, he could review (but not copy) a redacted version of the Report. She confirmed the Appeal Committee would receive and consider the Report as evidence in making its decision.

38.     Dr. Gwirtz sent a subsequent letter to Plaintiff regarding the appeal hearing. She told him that attendance at the hearing would be limited to the Appeal Committee, Plaintiff, a hospital advisor for each party, and witnesses.  It noted that parties could challenge particular members of the Appeal Committee and that "[t]he committee member will determine whether he/she can serve with fairness and objectivity."

39.     Plaintiff engaged an expert witness to testify regarding the partiality of Ms. Kaiser's investigation and the misleading Report, but due to UNTHSC's policy of not providing reports to faculty members accused of misconduct, the expert witness could not review the Report to prepare for the hearing.

40.     When he arrived for his appointment to review the Report, Dr. Walsh immediately noticed that it did not include many of the statements he had made to Ms. Kaiser, including his statement that Medical Student had reached behind her back to hold his hand; that her statement that he touched her buttocks arose from her siting on his hand; that she had grabbed his hand while they were on an escalator and pulled him toward her; or that she had been smiling and laughing the whole evening. Dr. Walsh also noted blatant falsehoods in the

Report, including its representation that he had essentially confirmed Medical Student's account; its false assertion that he admitted asking her if she wanted him to come to her room; and its observation that he knew the events of the evening were "not right."

42. In addition to the uphill battle he faced regarding the Report, Dr. Walsh was not informed that one member of the Appeals Committee, Defendant Damon Schranz, had been acting for some time as a "preceptor" for Medical Student. In his capacity as a preceptor, Schranz was a key advisor to Medical Student, spending approximately forty hours each week with her in various clinics. This close relationship inevitably impacted his impartiality. Had Plaintiff known that Defendant Schranz was Student's preceptor, he would have objected to his ability to act with neutrality.

42. The appeal hearing was conducted on March 23, 2015. Defendants Hodge, Schetz, Clay, Killam-Worrall, Hartos, Salem, Spence-Almaguer, Suzuki, Kosmopoulos, and Schranz comprised the Appeals Committee (collectively, "Defendant Appeals Committee").

43. Neither Defendant Gwirtz nor Defendant Appeals Committee required Medical Student to testify, nor did Defendant Appeals Committee otherwise question her.  Hence, Plaintiff had no opportunity to cross-examine the one person who contended he had acted in a manner deserving of termination.

44. Contrary to the requirements of the Policy, Defendant Gwirtz and Defendant Appeals Committee considered information acquired outside of the hearing by the investigator, Lisa Kaiser. They then allowed Ms. Kaiser to provide hearsay testimony of the allegations of Medical Student.

45. To attempt to rebut Ms. Kaiser's hearsay testimony, Plaintiff sought to introduce contemporaneous photos of the event showing Medical Student with her arms around Plaintiff

and otherwise showing Medical Student with no discomfort or distress when in very close proximity to Plaintiff. Defendant Gwirtz and Defendant Appeals Committee refused to allow introduction of the evidence, depriving Plaintiff of any realistic opportunity to show what happened on the night in question.

46.     Plaintiff further sought to rebut Ms. Kaiser's testimony by asking an expert in sexual harassment law who had conducted many sexual harassment investigations herself to be present to testify on his behalf. Because Plaintiff already had been denied the opportunity to have a copy of Ms. Kaiser's Report, the expert was unable to review it prior to testifying.  In lieu of the expert reading the Report, Plaintiff requested that the Appeals Committee allow her to listen to the testimony of Ms. Kaiser at the hearing so that she could respond to it.

47.     To compound the unfairness of allowing Ms. Kaiser, an attorney, to testify for Medical Student, Defendant Appeals Committee refused to level the playing field by allowing an equally educated and experienced investigator simply to listen to Ms. Kaiser's testimony. Thus, Plaintiff's witness had to come to the hearing blindfolded, with neither an opportunity to review Ms. Kaiser's Report before the hearing nor to listen to her testimony.  The Appeals Committee thus again denied Plaintiff the opportunity to cross-examine the chief witness against him.

48.     While the Committee allowed her to testify, the expert's testimony was limited to what Dr. Walsh's non-lawyer representative was able to elicit. Despite these hardships, Plaintiff's expert pointed out to the Appeals Committee problems with Ms. Kaiser's investigation, including the inaccuracies, omissions, and half-truths in the Report.  She also reminded the Appeals Committee of UNTHSC's burden to demonstrate misconduct on Plaintiff's part.

49.     The Appeals Committee concluded that Plaintiff had violated Faculty Policy 5.205 prohibiting the creation of a hostile work environment and it recommended that Plaintiff be terminated.

50.     Following the Committee's determination, Plaintiff notified President Williams of the failures in the hearing that had led to their wrong conclusion. President Williams refused to address any of the issues identified by Plaintiff, and he decided to terminate Plaintiff's employment. He mailed a letter to Plaintiff on April 16, 2014, advising him of the termination decision.

## VI.     Claims

### Count I - Violation of 42 U.S.C. § 1983
### Violations of Plaintiff's Due Process Rights by the Individual Defendants

51.     Each allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

52.     Plaintiff's Employment Contract provides that he could be terminated only for specific good cause reasons. UNTHSC's policies and established rules provided the procedure UNTHSC was required to follow to determine if his employment could be terminated. Thus, Plaintiff had a Constitutionally-protected property interest in his continued employment with UNTHSC sufficient to entitle him to due process protection. As such, Plaintiff was entitled to be heard at a meaningful time and in a meaningful manner before his employment was terminated.

53.     UNTHSC's Policy and due process requires, minimally, a hearing consisting of the following:

   a.   For UNTHSC to meet its burden of establishing good cause for his termination by the greater weight of the credible evidence;

   b.   To confront his accuser, that is Medical Student;

    c.  To be judged only by evidence at the hearing, and not from statements heard outside the hearing, such as those heard by the investigator;

    d.  To present his defense to an appeals committee comprised of individuals without conflicts of interest, such as Defendant Schranz, who acted as Medical Student's preceptor;

    e.  To have access (himself or through his expert) to the evidence to be used against him, and in particular, the Report and the testimony of the investigator.

54.  Because the accuser's statement made outside of the hearing was the entire basis for Defendant Appeals Committee's decision, Defendant Gwirtz and the Committee's refusal to require Medical Student to testify deprived Plaintiff of his opportunity to cross-examine her and to address her contentions meaningfully. Thus, Defendant Gwirtz and Defendant Appeals Committee deprived Plaintiff of a meaningful opportunity to be heard.

55.  Defendant Gwirtz and the Committee's refusal to allow Plaintiff or Plaintiff's attorney expert to review attorney Kaiser's Report before the hearing, and their refusal to allow Plaintiff's attorney expert to listen to attorney Kaiser's testimony, deprived Plaintiff of an opportunity to meaningfully cross-examine attorney Kaiser.

56.  Defendant Schranz's failure to recuse himself from the Appeals Committee when he had acted as the preceptor for Medical Student deprived Plaintiff of an unbiased decision-making panel and a meaningful opportunity to be heard.

57.  Defendant Appeals Committee was obligated to follow the Policy, which it did not do. Moreover, the Committee was informed by Plaintiff, by Plaintiff's representative, and/or by Plaintiff's attorney sexual harassment witness of the Policy failures that occurred at the hearing, including that Plaintiff had not been given the opportunity to confront his accuser, to

present contemporaneous photographs of the evening, and to otherwise establish his innocence of the charges made against him.

58.     Each of the members of the Appeals Committee was informed by Plaintiff, by Plaintiff's representative, and/or by Plaintiff's attorney sexual harassment witness that UNTHSC had not met its burden of proving sexual harassment or good cause for termination by the greater weight of the credible evidence.

59.     The failure of Defendant Gwirtz and the Defendant Appeals Committee, or any of them, to require that the hearing be held consistent with their own policies and in a manner designed to provide Plaintiff with a meaningful opportunity to be heard is a violation of the due process clause of the Fourteenth Amendment.

60.     Defendant Gwirtz's and Defendant Appeals Committee's actions were not objectively reasonable in light of the clear legal rules applicable to their actions at the time of the action.

61.     Defendant Williams was advised by Plaintiff of his inability to obtain a meaningful hearing because of his inability to confront his accuser and the reliance of the Committee on the hearsay testimony of Ms. Kaiser and her report. Defendant Williams was deliberately indifferent to the process failures brought to his attention by Plaintiff. His actions were not objectively reasonable in light of the clear legal rules applicable to his actions.

62.     As a direct result of Defendants' conduct, Plaintiff has suffered loss of income and benefits in the past, loss of income and benefits in the future, damage to his personal and professional career and reputation in the past and future, humiliation and embarrassment, and in all reasonable probability, he will continue to suffer damages.

**Count II - Violation of 42 U.S.C. § 1983**
**Violations of Plaintiff's Equal Protection Rights by the Individual Defendants**

63.     Each allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

64.     The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.

65.     The actions set forth above by Defendant Gwirtz, Defendant Appeals Committee, and Defendant Williams in refusing to require the female complainant to testify, in accepting out of court testimony from the female complainant in violation of its own Policy, in accepting hearsay testimony from the complainant's female attorney representative, in refusing to grant Plaintiff a reasonable opportunity to rebut the Title IX charges asserted against him by a female, and in reaching the untenable conclusion that Plaintiff had violated UNTHSC's sexual harassment policy and/or engaged in conduct that constituted good cause for termination establish the Committee's failure to provide Plaintiff with equal protection of the laws on account of his gender.

66.     As a result of each of the Defendants' deprivation of Plaintiff's equal protection rights, Plaintiff has suffered loss of income and benefits in the past, loss of income and benefits in the future, damage to his personal and professional career and reputation in the past and future, humiliation and embarrassment, and in all reasonable probability, he will continue to suffer damages.

**Count IV - Attorneys' Fees**

67.     As a result of Defendants' wrongful conduct, Plaintiff has been forced to retain the undersigned counsel. He has incurred, and will continue to incur, necessary attorneys' fees related to his pursuit of his claims against Defendants.

### Count IV - Jury Demand

68.     Plaintiff demands trial by jury on all issues so triable.

### Prayer

Based on the foregoing, Plaintiff demands that Defendants appear and answer, and that on final trial of this lawsuit, Plaintiff have final judgment against Defendants for the following relief:

a.  Lost wages, salary, and employment benefits;

b.  Compensatory damages for future pecuniary loss, emotional pain and suffering, inconvenience, and loss of enjoyment of life;

c.  Liquidated damages;

d.  Exemplary damages on all claims allowed by law and in such amounts allowed by law;

e.  Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f.  Costs of suit, reasonable attorneys' fees, and expert fees;

g.  Reinstatement; and

h.  Such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,


By:   /s/ *Julie E. Heath*
            Julie E. Heath
            State Bar No. 09348050
            Jennifer G. Snow
            State Bar No. 24051793
            FARROW-GILLESPIE & HEATH LLP
            1700 Pacific Ave., Suite 3700
            Dallas, Texas  75201
            (214) 361-5600 (telephone)
            (214) 203-0651 (fax)
            julie.heath@fghlaw.com
            jennifer.snow@fghlaw.com


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading was served via the Court's ECF system, on this the 27th day of July, 2017, upon the following:

            KEN PAXTON
            Attorney General of Texas
            JEFFREY C. MATEER
            First Assistant Attorney General
            BRANTLEY STARR
            Deputy First Assistant Attorney General
            JAMES E. DAVIS
            Deputy Attorney General for Civil Litigation
            ANGELA V. COLMENERO
            Chief, General Litigation Division
            Drew Harris
            Assistant Attorney General

            Office of the Attorney General
            P.O. Box 12548, Capitol Station
            Austin, Texas  78711-2548


                              /s/ *Julie E. Heath*
                              Julie E. Heath